Hyginus Chakwop NGASSA

v.

Stella Tchapmou MPAFE.

Civil No. L–07–585.

United States District Court, D. Maryland.

June 1, 2007.

Stephen John Cullen, Miles and Stockbridge PC, Towson, MD, Jennifer M. Schwartzott, Miles And Stockbridge PC, Baltimore, MD, for Hyginus Chakwop Ngassa.

Thomas F. McKeon, Butler McKeon And Associates PA, Baltimore, MD, for Stella Tchapmou Mpafe.

## MEMORANDUM

LEGG, Chief Judge.

This is a suit pursuant to The Convention on the Civil Aspects of International

Child Abduction, done at the Hague on October 25, 1980, and the International Child Abduction Remedies Act, 42 U.S.C. § 11601, *et seq.* The custodial parent, Dr. Hyginus Chakwop Ngassa, resides in Brescia, Italy. The non-custodial parent, Dr. Stella Tchapmou Mpafe, took the child, Therese Marsi Ngassa, from Italy to the United States without Dr. Ngassa's permission. Dr. Ngassa seeks an order requiring the return of Therese to Italy. For the reasons stated herein, the Court will, by separate Order, GRANT Dr. Ngassa's petition and ORDER the return of the child to Dr. Ngassa forthwith.

## I. Background

### A. Facts as Alleged in Complaint

As alleged in the Complaint, Dr. Ngassa and Dr. Mpafe share one child, Therese Marsi Ngassa, who is seven years old. Although Dr. Ngassa and Dr. Mpafe were never married, they lived together in Italy until their relationship ended in 2003. Dr. Mpafe then moved the child to Cameroon without Dr. Ngassa's permission, Dr. Ngassa contends. While in Cameroon, Therese lived with her maternal grandparents. In early 2006, Dr. Ngassa successfully petitioned the judicial authorities in Cameroon to have the child returned to Italy.

When Therese returned to Italy in early 2006, she was fully integrated into Italian life and attended school in Brescia. On July 25, 2006, the Juvenile Court of Brescia issued an order (i) awarding Dr. Ngassa custody of Therese, (ii) restricting Dr. Mpafe's access to the child solely within the Municipality of Brescia, and (iii) stating that Dr. Mpafe shall not take Therese abroad without Dr. Ngassa's permission.

On December 23, 2006, Dr. Mpafe picked up Therese from Dr. Ngassa's home and agreed to return Therese the following evening so that she could celebrate Christmas with her father. Dr. Mpafe did not return Therese as promised. Rather, on or about December 24, 2006, Dr. Mpafe took Therese to the United States in violation of the custody order. Dr. Ngassa contends that he never acquiesced or consented to Therese's removal from Italy.

### B. The Instant Lawsuit

On March 8, 2007, Dr. Ngassa filed the instant suit seeking the return of Therese to Italy. The lawsuit is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 ("the Convention"), and the International Child Abduction Remedies Act, 42 U.S.C. § 11601, *et seq.* ("ICARA"). ICARA establishes procedures for implementing the Convention in the United States. The Convention and ICARA authorize a district court to determine the merits of the abduction claim but not the merits of the underlying custody dispute. *See* 42 U.S.C. § 11601(b)(4).

The Convention applies to cases where a child under the age of 16 has been removed from his or her habitual residence in breach of the petitioner's custody rights, which the petitioner was exercising at the time of the wrongful removal of the child. Dr. Ngassa argues that Dr. Mpafe wrongfully removed Therese in violation of the Convention. Specifically, he contends that:

(i) Therese is under the age of 16,

(ii) when Therese was removed from Italy, he was exercising his custody rights within the meaning of Articles 3 and 5 of the Convention, in that he is the father and has rights of custody pursuant to an Italian custody order and the Italian Civil Code, and

(iii) Therese was habitually living in Italy within the meaning of Article 3 of the Convention at the time of her removal from Italy. She attended elementary school in Brescia and was fully a part of his family nucleus in Italy. Therese has numerous friends and relatives in Brescia and was fully involved in all aspects of daily and cultural life in Italy.

On March 16, 2007, the Court held a show cause hearing.[1] Dr. Mpafe and Therese appeared at the hearing without counsel. Dr. Ngassa's counsel appeared, but Dr. Ngassa himself was not present in court.

At the show cause hearing, Dr. Mpafe stated that she and Therese were residing in Baltimore and that Therese attends a local parochial school. The Court directed Dr. Mpafe not to leave Maryland and ordered her to surrender Therese's passport to the Court. The Court also scheduled an evidentiary hearing to resolve the merits of the complaint seeking the return of Therese to Italy.

A week after the show cause hearing, Dr. Mpafe surrendered Therese's passport as directed. Dr. Mpafe later obtained counsel, who filed an Answer to the Complaint. In her Answer, Dr. Mpafe asserts all defenses available under Articles 12, 13, and 20 of the Convention and 42 U.S.C. § 11603.

## C. The Convention

Below is a brief summary of the relevant articles of the Convention:[2]

**Article 1:** The objects of the Convention are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."

**Article 3:** "The removal or the retention of a child is to be considered wrongful where—(a) it is in breach of rights of custody attributed to a person … under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."

**Article 5:** "Rights of custody" includes "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."

**Article 12:** Where the child has been wrongfully removed in terms of Article 3, and less than one year has elapsed from the date of the wrongful removal, the court shall order the return of the child forthwith.

**Article 13:** Notwithstanding the provisions in Article 12, the court "is not bound to order the return of the child if the person … [who] opposes its return establishes that—

(a) the person … having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention, or

(b) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."

---

1. District Judge William D. Quarles, Jr., presided over the show cause hearing.

2. *See* 19 I.L.M. 1501 (1980).

Under Article 13, the court may also "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views."

**Article 16:** The court shall not decide on the merits of rights of custody unless it determines that the child is not to be returned.

**Article 20:** The court may refuse to return the child if the child's return would violate the "fundamental principles of the [United States] relating to the protection of human rights and fundamental freedoms."

**Article 26:** Upon ordering the return of a child, the court "may, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child."

### D. The Evidentiary Hearing

On May 31, 2007, the Court held an evidentiary hearing regarding the merits of the suit. Both parties were represented by counsel. ICARA establishes procedures for implementing the Convention in the United States and describes the burdens of proof that apply during such a hearing:

(i) Dr. Ngassa, as the petitioner, must establish by a preponderance of the evidence that Therese has been wrongfully removed or retained within the meaning of the Convention, and

(ii) to prevent the return of Therese to Italy, Dr. Mpafe must establish

   (a) "by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies," and

   (b) "by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies."

*See* 42 U.S.C. § 11603(e). In addition, ICARA states that documents and information need not be authenticated to be admissible in court. *See* 42 U.S.C. § 11605.[3]

Prior to the hearing, the Court distributed to counsel a list of eight issues to be discussed during the hearing. The eight issues are:

(i) Is it uncontested that the Juvenile Court of Brescia awarded custody of the child, Therese Ngassa, to the father, Dr. Ngassa?

(ii) Is it uncontested that the custody decree stated that the child's mother, Stella Mpafe, could not take Therese abroad without the father's permission?

(iii) Is it uncontested that as of December 24, 2006, Therese was living with Dr. Ngassa in his home in Brescia, Italy?

(iv) Is it uncontested that Dr. Mpafe's removal of Therese from Italy to the United States contravened the terms of the Italian child custody agreement?

(v) Does Dr. Mpafe contend that Dr. Ngassa consented to Therese's removal from Italy?

---

**3.** Article 30 of the Convention also provides that any application submitted to the Court, together with documents and any other information appended thereto, shall be admissible. *See* 19 I.L.M. 1501 (1980).

(vi) Does Dr. Mpafe contend that, if Therese is returned to Italy with her father, she would be exposed to physical or psychological harm?

(vii) Do the parties agree that Therese, at seven years old, has not attained an age and degree of maturity at which it is appropriate for the Court to take account of her views?

(viii) Does Dr. Mpafe contend that Therese's return to Italy would not be permitted by the fundamental principles of the United States relating to the protection of human rights and fundamental freedoms?

At the outset of the hearing, the Court requested counsel for Dr. Mpafe to identify those issues that are in dispute. Counsel stated that the first four issues were not contested. Regarding the fifth, Dr. Mpafe conceded that Dr. Ngassa did not consent to Therese's removal from Italy. Counsel then explained that issues six, seven, and eight are in dispute. He also advanced two additional legal arguments for the Court to consider: (i) that the Italian custody order violates procedural due process requirements because Dr. Mpafe was not given notice of the custody proceeding, and (ii) that Cameroon, not Italy, was Therese's habitual residence. The Court will refer to these issues as issues nine and ten, respectively.

During the hearing, Dr. Ngassa and his wife, Cynthia Ngassa, testified in support of the request to return Therese to Italy. Dr. Mpafe and her father, Anthony Mpafe, testified in opposition.

## II. Analysis and Rulings

### A. Contested Issues

Regarding the contested issues, the Court rules as follows:

*Issue No. 6:* Dr. Mpafe invoked the defense under Article 13b of the Conven-

tion. Article 13b provides that the Court need not order Therese's return if there is a grave risk that her return to Italy would expose Therese to physical or psychological harm or otherwise place her in an intolerable situation. Dr. Mpafe must prove the existence of such a grave risk by clear and convincing evidence. *See* 42 U.S.C. § 11603(e).

Dr. Mpafe argued that Therese would be exposed to physical harm because (i) there is friction between Therese and her stepmother, Cynthia Ngassa, and (ii) Therese reported to her mother than she had been "beaten" by her stepmother. The Court finds that there is scant evidence, much less the clear and convincing proof that is required, that Therese's stepmother beat her.

Dr. Mpafe reported generally that Therese complained about being "beaten," but offered no specifics. Nor did she offer an evaluation from a child psychiatrist, child psychologist, or other mental health professional expressing the opinion that Therese had been beaten while living with her father in Italy. In addition, Dr. Mpafe concedes that, although she regularly spoke to Therese during the nine months during which Therese was living with her father and stepmother in Italy, Therese did not report the alleged "beating" to Dr. Mpafe until after Dr. Mpafe took Therese to the United States.

Dr. Ngassa, a medical doctor, denied under oath that there was any physical abuse of Therese. He also stated that he had not observed any marks or bruises on his daughter. Dr. Ngassa also testified that Therese was happy while residing with him in Italy.

Although Therese's stepmother, Ms. Ngassa, admitted during testimony that she occasionally spanked Therese and her siblings, she said that she did so as part of

the normal discipline of the children. She explained that she "smacked" them on their bottoms with a rubber flip-flop. She never spanked the children, including Therese, on their bare skin, and never to a degree to cause real pain. This form of discipline does not constitute a grave risk of physical harm under the Convention.

■ Accordingly, the Court concludes that Dr. Mpafe has not proven, by clear and convincing evidence, that there is a grave risk that Therese's return to Italy would expose Therese to physical or psychological harm.

■ *Issue No. 7:* Under the Convention, the Court may refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate for the Court to take account of the child's views. Dr. Mpafe moved for the Court to interview Therese. The Court DENIES the motion. In the Court's view, a seven-year-old child has not attained the requisite age and degree of maturity. Moreover, the evidence of the alleged "beating" can only be characterized as scant. There is, therefore, no pressing reason for the Court to speak directly to the child.

■ Dr. Mpafe also requested the Court to order Therese to be examined by a psychiatrist or other professional. The Court DENIES the request for two reasons. First, as stated above, there is only scant evidence of the alleged "beating" and a psychiatric evaluation, therefore, would not be helpful. Second, Dr. Mpafe had a full opportunity to develop psychiatric evidence prior to the hearing but failed to do so.

*Issues No. 8 & 9:* The Court conflates these two issues, which concern whether the Court should give credence to the custody decree of the Juvenile Court of Bres-cia. Dr. Mpafe contends that she was not notified of the Italian custody proceedings. She argues that the custody order was, therefore, issued in violation of her procedural due process rights, as guaranteed by the United States Constitution. Although Dr. Mpafe claims that she never received notice, at the hearing before this Court, Dr. Ngassa introduced into evidence a signed return receipt from the Italian postal service showing that papers pertaining to the Italian custody suit were delivered to Dr. Mpafe's Maryland address.

■ The Court need not resolve the factual dispute regarding whether Dr. Mpafe received notice of the proceedings. The Court is satisfied that under Italian law, Dr. Mpafe has the right to petition the Italian court at any time to amend the custody decree. (*See* Dr. Ngassa's hearing exhibit K, NGASSA0023.) Dr. Mpafe, therefore, can, at any time, petition the Italian court for custody or to increase her visitation rights. She may also bring to the attention of the Italian court any concerns she has about how Dr. Ngassa and his wife treat Therese. These available options satisfy the procedural due process concerns.

■ *Issue No. 10:* The Court rejects the notion that Cameroon was Therese's habitual residence. Therese will be eight years old in August 2007. She has lived the majority of her life (five years and two months) in Italy. Moreover, she lived continuously in Italy as part of her father's household for nine months prior to her removal to the United States. The courts in Cameroon and Italy have ordered that the child's domicile is in Italy. The Court finds, therefore, that Italy was Therese's habitual residence at the time she was removed.

## B. Child to Be Returned to Italy

In conclusion, the Court finds that Dr. Ngassa has satisfied his burden of proving that Dr. Mpafe wrongfully removed Therese from Italy. Dr. Mpafe has failed to meet her burden of showing that one of the exceptions applies. Accordingly, the Court will ORDER Therese to be returned to Italy.

On June 1, 2007, the Court held a telephone conference with Counsel to deliver its ruling and to discuss the specifics regarding Therese's return to Italy. As discussed during the telephone conference,

(i) Therese SHALL BE RETURNED to Dr. Ngassa on a date of Dr. Ngassa's choosing between June 20 and June 30, 2007,

(ii) the Court will ORDER the Clerk's Office to RELEASE Therese's passport to Dr. Ngassa's attorney, Stephen J. Cullen, Esquire,

(iii) the Court will ORDER that, once Dr. Ngassa has the child in his possession, Dr. Mpafe's travel restrictions will be lifted,

(iv) the Court will ORDER counsel to file a joint status report, no later than July 13, 2007, regarding whether Dr. Ngassa, as the prevailing party, will request attorneys' fees and costs and, if so, in what amount. If Dr. Ngassa requests fees and costs, the parties shall brief the issue in accordance with the briefing schedule stated in the Local Rules, and

(V) the Court will close the case after the attorneys' fees issue has been decided.

## III. Conclusion

For the above reasons, the Court will, by separate Order, (i) GRANT Dr. Ngassa's petition, (ii) ORDER Dr. Mpafe to return Therese to Dr. Ngassa on a date of Dr. Ngassa's choosing between June 20 and June 30, 2007, (iii) ORDER the Clerk's Office to RELEASE Therese's passport to Dr. Ngassa's attorney, Stephen J. Cullen, Esquire, (iv) ORDER that, once Dr. Ngassa has the child in his possession, Dr. Mpafe's travel restrictions will be lifted, and (v) ORDER counsel to file a joint status report, no later than July 13, 2007, regarding whether Dr. Ngassa, as the prevailing party, will request attorneys' fees and costs and, if so, in what amount.

## ORDER

This is a suit pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980, and the International Child Abduction Remedies Act, 42 U.S.C. § 11601, *et seq.* The petitioner, Dr. Hyginus Chakwop Ngassa, seeks an order requiring the return of his child, Therese Marsi Ngassa, to Italy. For the reasons stated in the Memorandum of even date, the Court hereby:

(i) GRANTS Dr. Ngassa's petition,

(ii) ORDERS that Therese SHALL BE RETURNED to Dr. Ngassa on a date of Dr. Ngassa's choosing between June 20 and June 30, 2007,

(iii) ORDERS the Clerk's Office to RELEASE Therese's passport to Dr. Ngassa's attorney, Stephen J. Cullen, Esquire,

(iv) ORDERS that, once Dr. Ngassa has the child in his possession, Dr. Stella Tchapmou Mpafe's travel restrictions (previously set during the March 16, 2007 show cause hearing) will be lifted, and

(v) ORDERS counsel to file a joint status report, no later than July 13, 2007, regarding whether Dr. Ngassa, as the prevailing party, will request

attorneys' fees and costs and, if so, in what amount. If Dr. Ngassa requests fees and costs, the parties shall brief the issue in accordance with the briefing schedule stated in the Local Rules.